**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **GOODWILL OF WESTERN MISSOURI AND EASTERN KANSAS**, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | |
| **CITY OF OLATHE, KANSAS** and | ) | |
| **BRENDA LONG**, in her official | ) | **JURY TRIAL DEMANDED** |
| capacity as City Clerk for the City of | ) | |
| Olathe, Kansas, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Goodwill of Western Missouri and Eastern Kansas ("Goodwill") for its Complaint against Defendant City of Olathe, Kansas ("City") and Defendant Brenda Long, in her official capacity as City Clerk for the City of Olathe, Kansas, states and alleges as follows:

## NATURE OF ACTION

1.      Goodwill is a mission-driven nonprofit organization that has been dedicated to serving its community for 126 years. Generous community members donate gently used household items and clothing. Those items are sold back to the community through e-commerce, stores, or its outlet center.

2.      Goodwill's mission is to empower people to discover their potential and adapt for the future through the power of work. Goodwill leverages a social enterprise model of funding its community employment services.  As a nonprofit, Goodwill's sales revenue is a tool to empower job training programs for individuals overcoming barriers. Goodwill provides services such as digital skills training, virtual job fairs, and one-on-one career search support.

CORE/3516491.0005/165721628.1

3.      Goodwill's impact on the community is not limited to its workforce.  Goodwill prioritizes sustainability as it sells items that would otherwise likely be thrown out.  Items that Goodwill does not sell to the public are salvaged or recycled.  As a result, Goodwill diverts millions of pounds of items from landfills each year, helping to keep the air and water clean, and communities desirable to live in and visit.

4.      Goodwill's store in the City has been a success by any measure.  Goodwill has been embraced by the City's citizens and has generated approximately $1 million in annual revenue.  Goodwill also pays significant state and local taxes, and employs individuals who often cannot find other employment due to various obstacles, such as a different ability, legal history, limited education, limited work history, homelessness, or lack of transportation.

5.      In short, Goodwill is exactly the type of business that the City should value and encourage.

6.      The City, however, has taken steps to prevent Goodwill from operating in the City.  The City passed an ordinance adding Chapter 5.43 to the Olathe Municipal Code.  Chapter 5.43 ("DRB Ordinance") restricts the ability for thrift stores to operate.  The purported purpose of the DRB Ordinance is to protect surrounding property values, yet the City has no evidence or reason to believe that two thrift stores within a mile of each other would have *any* negative impact on surrounding property values.  And when Goodwill took action to move to a vacant building *across the street* to better serve the community, the City misapplied its own DRB Ordinance, declared that Goodwill was no longer a "lawfully nonconforming business" and denied Goodwill the required license to operate at the new location.

7.      The City also ignored the wants and desires of the Briarwood Homes Association – representatives of the very residential community the DRB Ordinance was purportedly designed

to protect – who wrote the City in support of Goodwill moving into and operating at its new location.

8.      In short, the City decided to effectively shut down Goodwill's new store in favor of keeping a building vacant – via an ordinance having the stated purpose of preserving property values.

9.      Denying Goodwill the ability to open a store in the City serves no legitimate public purpose.  And combined with the exceptions written into the DRB Ordinance, the only conclusion one can reach is that the City has determined that it wants to disadvantage businesses that serve low-income customers.  In doing so, the City has violated Goodwill's rights under the United States Constitution and Kansas Constitution.

10.      Goodwill respectfully requests that the Court find that the DRB Ordinance is void and unenforceable under the United States Constitution and the Kansas Constitution and award Goodwill damages and attorneys' fees.

11.      Alternatively, Goodwill respectfully requests that the Court compel the City to enforce the DRB Ordinance according to its terms and grant Goodwill a DRB License so it may operate at its new location.

## PARTIES

12.      Plaintiff Goodwill of Western Missouri and Eastern Kansas is a Missouri nonprofit corporation with its principal place of business in Missouri.

13.      Defendant City of Olathe, Kansas is a municipal corporation located in Johnson County, Kansas, which may be served with process by serving the City Clerk at 100 E. Santa Fe Street, Olathe, Kansas 66061.

14.      Defendant Brenda Long is the City Clerk for the City of Olathe, Kansas, and is sued in her official capacity only.  The City Clerk is responsible for granting a DRB License under the

CORE/3516491.0005/165721628.1

DRB Ordinance.  The City Clerk may be served with process by serving the City Clerk at 100 E. Santa Fe Street, Olathe, Kansas 66061.

## JURISDICTION AND VENUE

15.      This is a civil action challenging the constitutionality of the City's DRB Ordinance under the United States Constitution, and it seeks to redress a deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution of the United States.  Goodwill also seeks equitable relief and attorney's fees under federal civil rights laws.  Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

16.      This Court has jurisdiction over any remaining claims pursuant to 28 U.S.C. § 1367.

17.      Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs.

18.      The City and the City Clerk are citizens of Kansas.  Goodwill is a citizen of Missouri.  Therefore, complete diversity exists.

19.      Goodwill seeks an award of damages in excess of $75,000.

20.      Additionally, the injunctive relief sought against Defendants City and Long has a value in excess of $75,000.

21.      This Court has the authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

22.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to Goodwill's causes of action occurred in this judicial district and division.

## FACTUAL BACKGROUND

**I.      Goodwill is a valued nonprofit citizen of the City**

23.      Goodwill is a mission-driven nonprofit organization that has been dedicated to serving its community for 126 years.

24.      Goodwill's mission is to empower people to discover their potential and adapt for the future through the power of work.

25.      Goodwill serves individuals who are underemployed or unemployed. Almost 100% of the people Goodwill serves are low to moderate income.

26.      The people Goodwill serves and employ want to work, but they face numerous obstacles, such as a different ability, legal history, limited education, limited work history, homelessness, or lack of transportation.

27.      Goodwill leverages a social enterprise model of funding its community employment services.

28.      Generous community members donate gently used household items and clothing. Those items are sold back to the community through e-commerce, stores, or its outlet center. Items not sold are salvaged or recycled to protect the environment. Sales support Goodwill's jobs and the employment services Goodwill provides to the community.

29.      Goodwill of Western Missouri and Eastern Kansas has served over 617,000 people, provided over 23,000,000 services and secured over 202,000 jobs since it was founded in 1894.

30.      Goodwill believes every person deserves the opportunity to work. Employment is more than a paycheck. It is independence, agency, dignity, and equality. Jobs empower people to support themselves and their loved ones, pursue life goals, and participate in their communities.

CORE/3516491.0005/165721628.1

31.     As a nonprofit, Goodwill's sales revenue is a tool to empower job training programs for individuals overcoming barriers. Goodwill provides services such as digital skills training, virtual job fairs, and one-on-one career search support.

32.     Goodwill has instituted the Artemis Initiative which is a partnership among technology companies and Goodwill to train workers for the occupations of the future.

33.     Goodwill employs a mission-integrated model where its frontline associates are provided opportunities to conduct career planning and access upskilling opportunities. Goodwill wants to see employees get promoted, and Goodwill celebrates those who leave for other right-fit jobs in the community.

34.     Goodwill gives first and second chances. The US labor force participation rate for individuals with different abilities is only 20%. At Goodwill, 30% of the team self-identifies as having a different ability. Goodwill is also proud to employ veterans, individuals with legal history, and older workers.

35.     Goodwill's impact on the community is not limited to its workforce.  Goodwill prioritizes sustainability. Items that are not sold to the public are salvaged or recycled. This diverts millions of pounds of items from landfills each year, keeping the air and water clean, and communities desirable to live in and visit.

## II.     Goodwill's Operations at the Original Location

36.     Since 2002, more than *fourteen years* prior to the effective date of the DRB Ordinance, Goodwill has operated its business at 16630 W. 135th St., Olathe, KS 66062 (the "Original Location"), where it continually employed on average 30 full- and part-time employees, and served thousands of City residents in meeting their basic needs for clothing and household goods, while simultaneously providing for the re-use of items which otherwise would likely have increased the burden and expense of the City's solid waste handling staff and resources.

37.     Goodwill made a significant capital investment at the Original Location, resulting in annual property taxes exceeding $43,000 for each of the last 6 years.

38.     In its eighteen years at the Original Location, Goodwill customers paid Kansas sales tax on over $19.2 million in purchases.

39.     In its eighteen years at the Original Location, Goodwill has paid over $279,000 in City taxes and over $1,200,000 in Kansas taxes.

40.     In 2019 alone, Goodwill's Original Location had the following impact on its community:

- 46 new hires (20-35 active employees at any given time)
- $452,030 in wages
- 44,465 donations of gently used items
- 635,000 donated items sustainably handled
- 64,138 customer transactions
- $961,000 in Revenue
- $14,004 in City sales taxes
- $41,430 in County property taxes
- $60,684 in Kansas sales taxes

41.     Since the DRB Ordinance was passed, Goodwill has paid all required fees for, and has been issued, a Distance Related Business License under Code Chapter 5.43.

42.     Goodwill has a charitable purpose – as a 501c3 nonprofit organization, 880% of the margin from its business operations supports programs and services to empower people in overcoming barriers, building new skills, earning employment, and getting them on the path to independence.

III.    **Goodwill Seeks to Move to the New Location**

43.     In order to significantly upgrade its offerings and better serve the City's citizens, Goodwill has executed a non-contingent lease ("Lease") to relocate to 16175 W. 135th Street, Olathe, Kansas (the "New Location").

44.     The Lease represents Goodwill's commitment to continuing its business in the City for at least fifteen (but potentially twenty-five more years), incurring a substantial rent expense in excess of $5.8 million, and an initial capital investment in tenant improvement, furnishings, fixtures, and equipment in excess of $700,000.

45.     The New Location has been vacant for more than two years and its immediately prior use was as retail location for Aldi, a low-priced grocer.

46.     Goodwill's move to the New Location is a distance of about only 1,200 feet, just from the north side of West 135th Street, to the south of side of the same street, and accordingly does not constitute any material change of circumstances with respect to any legitimate policy interests of the City in DRB Ordinance.

47.     Goodwill estimates the following impact on the City's community during its first year in operation:

- $1.2 million in revenue
- At minimum 18 full-time equivalent employees
- 3.2 million pounds of donations collected and diverted from the City's landfills
- 65,000 donor transactions will be accommodated and processed

48.     If Goodwill is unable to operate at the New Location due to the DRB Ordinance, Goodwill will suffer, at minimum, the following damages:

- Lease payments totaling over $3 million for base rent and over $4 million with taxes
- Loss of $1.4-$1.7 million in annual revenue
- Loss of associated margin that coverage Goodwill's various workforce and mission services to the public

49.     Goodwill closed its store at the Original Location due to the stay-at-home orders issued in response to the COVID-19 pandemic as well as in anticipation of moving to the New Location.

8

II.     **The City's Distance-Restricted Business License Ordinance**

50.     Beginning in 2004, all "retailers" in the City were required to obtain a one-time certificate of registration from the City.  There is no fee associated with this registration.  Section 5.02.

51.     On May 6, 2008, the City adopted Ordinance No. 08-57, adding Chapter 5.43 to the Olathe Municipal Code pertaining to Payday Loan and Title Loan Businesses.

52.     The ordinance added licensure requirements for these businesses and required those businesses to be no closer than 1 mile from another payday or title loan business regulated under K.S.A. § 16a-2-404.

53.     In May 2016, the City amended Chapter 5.43 to add bail bond businesses, pawnbrokers, small-box discount retailers, and thrift stores to the list of "Distance-Restricted Businesses."

54.     The DRB Ordinance requires DRB businesses to obtain a license annually and pay an annual fee.

55.     The DRB Ordinance does not purport to impact or regulate what services Goodwill can provide or how those services can be provided.  Instead, the DRB Ordinance focuses on the alleged negative "secondary effect" of a thrift store's operations.

56.     Specifically, the City stated that the "intent of adding these businesses would be to reduce the proliferation of these businesses in close proximity to downtown Olathe and in other retail areas where these businesses may be highly concentrated and potentially impacting area commercial property values."

57.     But the City did not cite any legislative findings that support its purported concern about the "secondary effects" of two thrift stores located within a mile of each other.

58.     Based on a review of the City's Council Agenda Item and the City's Council Meeting Minutes, the City did not consider, review, or rely on any study, report, or analysis that supported the City's purported concern about the negative "secondary effects" caused by two thrift stores located within a mile of each other might negatively impact commercial property values.

59.     Section 5.43.010 defines a "thrift store" as:

a retail business selling second-hand and/or donated clothes and other household goods typically to raise funds for a charitable institution. This term does not include antique shops (for-profit businesses where collectible or valuable older items are purchased by the shop or individuals leasing space at the shop then re-sold for profit); consignment shops (for-profit businesses where an individual sells a used item and the shop takes a percentage of the sales profit in return); swap meets, flea markets or vintage/antique fairs associated with a City-approved Temporary Sales or Event Permit; Pawnbrokers; garage sales; or non-profit home improvement stores (not-for-profit businesses which sell donated new and used building materials, including electrical fixtures, appliances, kitchen cabinets, home furnishings and various types of hardware and tools at greatly reduced prices).

60.     Section 5.43.020 states that:

Any Distance-Restricted Business lawfully in existence on the effective date of this Section is required to obtain the license required hereunder within sixty (60) days of such effective date.

61.     Section 5.43.040(B) provides that "the City Clerk will issue a license for a Distance-Restricted Business unless the City Clerk finds that":

For Thrift Stores, the Thrift Store is located within 5,280 feet of any other Thrift Store of the same type or within 200 feet of any property used for residential purposes, including but not limited to any property used primarily for a single-family residence, a two-family residence, a town home, or an apartment building. Provided, however, that a Thrift Store may locate in a space previously occupied by a Thrift Store licensed under this chapter regardless of whether the previously occupied space currently satisfies the distance restrictions of this subsection, but only if the new license application is received within twelve (12) months of the expiration of the prior Thrift Store's license. The separation distances will be measured from the nearest property line of the residentially zoned property to the outer wall of the Thrift Store;

62.     Section 5.43.060 provides that:

If a Distance-Restricted Business does not conduct business for a period of ninety (90) days, the license will be void.

## III.    The City's denial of Goodwill's application for a DRB License

63.    On October 30, 2020, Goodwill submitted its application for a DRB License for the New Location.

64.    On November 30, 2020, the City Clerk denied Goodwill's DRB License application.  According to the City Clerk, the City "is unable to issue a license for Goodwill to operate at 16175 W. 135th Street (the "location"), because the location is within 5,280 feet of another Distance Restricted Business of the same type and is less than 200 feet from a residential neighborhood."[1]

65.    On December 2, 2020, Goodwill appealed the City Clerk's denial – well within 15 days.

66.    On December 9, 2020, Goodwill met with the Briarwood Homes Association – the association of homeowners in closest proximity to the New Location – to discuss Goodwill's intent to open and operate a new store at the New Location.  The Briarwood Homes Association supports Goodwill's plan to open a new store at the New Location.

67.    In fact, Mr. Lynch, President of the Briarwood Homes Association, wrote to the City expressing the Briarwood Homes Association's support of Goodwill.

---

[1] The City Clerk's Letter does not identify the "[o]ther Distance Restricted Business of the same type" that would be within 5,280 feet of the New Location.  Goodwill later learned that the City has identified this other business as the Savers retail location at 13509 S Mur-Len Rd #125a, Olathe, KS 66062, which opened years after Goodwill began operating at the Original Location.  Goodwill disputes, and does not concede, that it and this Savers are "of the same type."  Based on review of digital GIS information available online from Johnson County, Goodwill believes Savers is about 848 feet (exterior wall to exterior wall) from Goodwill's Original Location and the New Location is an almost identical distance (about 826 feet) from the same Savers.  In addition, the nearest wall of the building on the New Location is only about 25 feet (about the length of two cars) nearer to a residentially-zoned property line than the 200-foot requirement required by the DRB Ordinance.

68.     In a letter dated February 17, 2021, J. Michael Wilkes, the City Manager, denied Goodwill's appeal.

69.     Noting that Goodwill closed its store at the Original Location on March 31, 2020, Mr. Wilkes concluded that as of October 30, 2020, "Goodwill was not operating a thrift store and had no valid thrift store license.  Goodwill was not a DRB lawfully in existence and could not be considered a lawfully nonconforming business."

70.     Mr. Wilkes also concluded that "Chapter 5.43 does not provide for any exceptions to the distance restrictions for new applicants."

71.     According to the City Council's September 15, 2020, Meeting Minutes, the City was informed by the City's Deputy City Attorney that Goodwill still had a valid license.

72.     Goodwill requested to meet with the City to discuss its DRB License application multiple times after the City's November 30, 2020 denial.  The City refused to meet with Goodwill.

73.     The City's staff has refused Goodwill's request to put the denial of its DRB License on the agenda for the meetings of the City's Governing Body.  The City's staff has also refused Goodwill's request to propose modifications to the DRB Ordinance designed to provide less restrictive means by which the City may pursue its policy interests.

## IV.     The DRB Ordinance Discriminates Against Goodwill and its Customers.

74.     The DRB Ordinance was originally limited to payday loan and title loan businesses – two businesses that are heavily regulated under the laws and regulations of the State of Kansas.

75.     The City's expansion of the DRB Ordinance to include thrift stores, bail bond businesses, pawnbrokers, and small-box discount retailers is puzzling.  These entities are not heavily regulated under Kansas law.  These businesses have little in common with each other – they do not sell similar goods or provide similar services.

CORE/3516491.0005/165721628.1

76.     There is no rational basis connecting the DRB Ordinance and the City's purported goal of protecting surrounding property values.

77.     The City has not expressed any reason for grouping these different types of businesses together in the DRB Ordinance, or treating them similarly to each other and differently from other businesses not so-grouped.

78.     The only common thread among these businesses is that their customer base is comprised of individuals having lower income.

79.     The City's only stated justification for the DRB Ordinance is to protect area commercial values.

80.     But that goal appears to be pretext.  Not only is there no study, report, or analysis that supports the City's concern that two thrift stores located within a mile of each other may negatively impact surrounding property values, the City's exceptions in the DRB Ordinance make it clear that they are targeting Goodwill in particular.

81.     The DRB Ordinance does not apply to antique shops, consignment shops, swap meets, flea markets, vintage/antique fairs, pawnbrokers, garage sales, or non-profit home improvement stores – each of which sells "second-hand and/or donated clothes and other household goods."  Indeed, the City's DRB Ordinance appears to uniquely target Goodwill, given the "charitable institution" that the City's definition of a "thrift store" uses to select which retailers will be subject to the DRB Ordinance prohibitions.

82.     Simply put, the City cannot provide a rational basis to explain why non-profits and charities that serve people with disadvantages, people with economic barriers, and people with disabilities are not welcome in the City.  Indeed, it appears that the City seeks to prevent businesses

that serve individuals having lower income from operating in the City and thereby discouraging these individuals from shopping in the City

83.    The City cannot provide a rational basis to explain why the City will not allow Goodwill to operate at the New Location because it is within 200 feet of property used for residential purposes when the New Location is zoned for commercial retail activities and was previously occupied by Aldi, a low-priced grocer.

84.    The City cannot provide a rational basis to explain why the City considers the work of Goodwill as an undesirable business.

85.    The City cannot provide a rational basis to explain why the City carved out Habitat of Humanity, flea markets, consignment stores, etc. as acceptable and desirable businesses while excluding the nonprofit, mission-driven Goodwill.

86.    The City cannot provide a rational basis to explain why the City is essentially removing a business that has been of great service to the citizens of the City for nearly 20 years.

87.    The City cannot provide a rational basis to explain why the City would not approve Goodwill's DRB License application despite the support of the neighborhood the City is purporting to protect.

88.    The City cannot provide a rational basis to explain why keeping vacant a building (that has been vacant for two years) is better for economic development, neighboring property values, or any policy interest of the City for that matter, than a Goodwill store.

89.    As drafted and enforced, the DRB Ordinance represents the City's view that Goodwill's work, Goodwill's mission, and the people Goodwill services are unwelcome in the City of Olathe.  Such a decision usurps the freedom and liberty of private persons and businesses to lawfully do business as they please, free from unjustified biases or government regulations.

90.     The DRB Ordinance is the embodiment of systematic classism and must be struck down as unconstitutional.

**V.      Goodwill has been damaged by its inability to operate at the New Location.**

91.     Goodwill's inability to operate at the New Location has resulted in numerous damages to Goodwill.

92.     Without operating at the New Location, Goodwill has lost the ability to generate revenue.  Goodwill generated $961,000 in revenue at the Original location in 2019.  Goodwill anticipated generating $1.2 million in revenue at the New Location, with year-over-year revenue growth of 5 percent.

93.     Under its Lease at the New Location, Goodwill must pay annual rent of $219,855.96 for the first 10 years and $230,848.80 thereafter.

94.     Goodwill has committed to spend at least $700,000 in renovating the New Location.

### COUNT I – DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201
**(Against Defendant City)**

95.     Goodwill re-alleges and incorporates by reference herein the allegations in Paragraph 1 through 94 of its Complaint as if fully set forth herein.

96.     Pursuant to 28 U.S.C. § 2201(a), the Court "may declare the rights and other legal relations of any interested party seeking such declaration."

97.     This case involves an actual controversy between Goodwill and the City regarding the constitutionality of the DRB Ordinance.

98.     The DRB Ordinance's discriminatory application to Goodwill has injured Goodwill and their customers, and has deprived Goodwill of its right to due process and equal protection of the laws.  The City's denial of Goodwill's DRB License application constitutes an ongoing

violation of the Due Process Clause and Equal Protection Clause, Amendment XIV, of the United States Constitution.

**WHEREFORE**, for the reasons stated herein, Goodwill is entitled to a declaration that the City cannot enforce the DRB Ordinance against Goodwill.  Goodwill is further entitled to a declaration that the DRB Ordinance is invalid and unenforceable under the Due Process Clause and the Equal Protection Clause of the United States Constitution.

## COUNT II – DEPRIVATION OF GOODWILL'S PROCEDURAL DUE PROCESS RIGHTS IN VIOLATION OF 42 U.S.C. § 1983
### (Against Defendant City)

99.     Goodwill re-alleges and incorporates by reference herein the allegations in Paragraph 1 through 98 of its Complaint as if fully set forth herein.

100.    Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

101.    The Due Process Clause of the Fifth and Fourteen Amendments to the United States Constitution, and Sections 1 and 18 of the Bill of Rights of the Kansas Constitution, ensure protection from an arbitrary deprivation of an individual's liberty or property interest without due process of law.

102.    Goodwill has a constitutionally protected liberty and/or property interest in its Lease, in its right to conduct business in the City of Olathe free from illegal discrimination, and in its status as a "lawfully nonconforming business".  Indeed, the right to use one's interest in land to any legitimate use is properly within the protection of the Constitution.

103.    The City, under color of state law, has deprived and continues to deprive Goodwill of its procedural due process rights, as secured by the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

104.    The City has no immunity from this claim under the Eleventh Amendment to the United States Constitution.

105.    The basic elements of procedural due process are notice and an opportunity to be heard at a meaningful time and in a meaningful manner.  A due process violation occurs if the claimant establishes that it was denied a specific procedural protection to which it is entitled.

106.    The DRB Ordinance regulates activity and the use of private land in the same manner as a zoning regulation, but without the protection to regulated persons that is afforded by the Kansas legislature for zoning regulations.

107.    K.S.A.  § 12-742(a)(10) defines "zoning" as the "regulation or restriction of the location and uses of buildings and uses of land".

108.    The DRB Ordinance restricts the location of Goodwill's business and the use of its interest in the land.

109.    K.S.A.  § 12-755(a) provides that "[t]he governing body may adopt zoning regulations which may include, but not be limited to, provisions which: … (5) provide for the issuance of special use or conditional use permits".

110.    K.S.A.  § 12-756(a) and K.S.A. § 12-759(e) require a planning commission to be involved with zoning regulations, and requires the right to appeal a zoning determination to a board of zoning appeals, which has the authority to grant variances.

111.    The DRB Ordinance does not follow any of the Kansas zoning law requirements or provide Goodwill with any of the rights set forth under the Kansas zoning laws.

CORE/3516491.0005/165721628.1

112.    The City Council passed the DRB Ordinance.  Upon information and belief, neither the City's Planning Commission nor the City's Board of Zoning Appeals were involved with the drafting, consideration, or passage of the DRB Ordinance.

113.    When faced with a zoning request, Kansas zoning laws require the zoning authority to make zoning decisions based on the facts and circumstances of each situation.

114.    Kansas zoning laws allow for variances and special use permits so that the zoning authority has discretion to make decisions in the best interest of the community and involved-individuals based on the facts of each situation.

115.    The DRB Ordinance as applied by the City provides no discretion to the City Clerk or the City Manager to approve a DRB License application.  According to the City, it has no ability to approve a DRB License application if the distance-restriction requirements are not met.

116.    And, on information and belief, the City has not undertaken any factual investigation at all (let alone inquiry into the nature of the Savers's business or procurement of legally-sufficient survey by a licensed surveyor) to ascertain the whether the New Location would actually constitute operation of a distance-restricted business in violation of the letter of the DRB Ordinance.

117.    Accordingly, DRB Ordinance Section 5.43.080 does not provide an applicant with a right to appeal.  As applied by the City, DRB Ordinance Section 5.43.080 only allows an applicant to correct a clerical error.

118.    Goodwill was given no hearing by the City or any opportunity to argue for a variance or special use permit – all of which are required under Kansas law.

119.    Not only was Goodwill denied a hearing, but the City has denied Goodwill's repeated requests to simply meet with staff members of the City.

120.    For example, the City denied Goodwill's DRB License application in part because the New Location was within 200 feet of a residential property.  But the Briarwood Homes Association supports Goodwill's move to the New Location.  The City, however, applied the DRB Ordinance in a manner that made the support of the Briarwood Homes Association – who is purportedly benefited by the DRB Ordinance – wholly relevant and immaterial.

121.    The City's failure to comply with, and its attempt to regulate private land outside of, the requirements of Kansas zoning law renders the DRB Ordinance void and unenforceable.

122.    As a result of these deprivations in violation of the United States Constitution, Goodwill is entitled to relief under 42 U.S.C. § 1983.  Specifically, Goodwill is entitled to injunctive relief prohibiting the City from enforcing the DRB Ordinance against Goodwill and for damages suffered by Goodwill as a result of the City's constitutional violations.

123.    Without relief from this Court, the City, acting under color of state law, will continue to deprive Goodwill of its rights guaranteed by the United States Constitution.

124.    As a result of the City's constitutional violations, Goodwill has suffered lost revenue from its inability to operate at the New Location and increased expenses due to its stymied relocation to the New Location.  Goodwill is entitled to an award of damages under 42 U.S.C. § 1983 in amount to be determined at trial.

125.    An award of reasonable attorneys' fees as part of Goodwill's costs is justified under 42 U.S.C. § 1988(b).  Goodwill's claim for attorneys' fees is cumulative, and therefore increases the longer it takes to resolve this dispute.

**WHEREFORE,** Goodwill prays for the Order of the Court (a) finding that the DRB Ordinance violates Goodwill's procedural due process rights, (b) declaring the DRB Ordinance void and unenforceable, (c) declaring that Goodwill may operate in the City without a DRB

License, (d) awarding Goodwill damages caused by the City's constitutional violations, (e) awarding Goodwill its attorneys' fees, and (f) for such other and further relief as this Court may deem just and proper under the premises.

## COUNT III – DEPRIVATION OF GOODWILL'S EQUAL PROTECTION RIGHTS IN VIOLATION OF 42 U.S.C. § 1983
### (Against Defendant City)

126.     Goodwill re-alleges and incorporates by reference herein the allegations in Paragraph 1 through 125 of its Complaint as if fully set forth herein.

127.     Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

128.     The Equal Protection Clause of the Fifth and Fourteen Amendments to the United States Constitution, and Sections 1 and 18 of the Bill of Rights of the Kansas Constitution, ensure protection from an arbitrary deprivation of an individual's liberty or property interest without due process of law.

129.     Goodwill has a constitutionally protected liberty and/or property interest in its Lease, in its right to conduct business in the City of Olathe free from illegal discrimination, and in its status as a "lawfully nonconforming business".  Indeed, the right to use one's interest in land to any legitimate use is properly within the protection of the Constitution.

130.     The City, under color of state law, has deprived and continues to deprive Goodwill of its equal protection rights, as secured by the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

131.    The City has no immunity from this claim under the Eleventh Amendment to the United States Constitution.

132.    The Equal Protection Clause of the Fourteenth Amendment prohibits any state from denying "any person within its jurisdiction the equal protection of the laws."  U.S. Constitution Amendment XIV, § 1.

133.    The Equal Protection Clause prohibits governmental decision-makers from treating differently persons who are in all relevant respects alike.

134.    The City's use of classifications in the DRB Ordinance differentiates among classes unreasonably to the detriment of Goodwill's liberty and property interests.

135.    The DRB Ordinance is arbitrary, oppressive, and capricious and has no reasonable relationship to the alleged harms sought to be prevented.

136.    The New Location is zoned for commercial purposes.  If Goodwill sold *new* clothes and household goods, then it could operate at the New Location without the need for any license from the City.

137.    The City has not identified how it can rationally justify preventing Goodwill from occupying the same New Location for the purpose of selling *second-hand* or *donated* clothes and household goods.

138.    Thus, the DRB Ordinance appears to rest on an irrational prejudice against a seller of second-hand or donated goods and the customers it serves.

139.    As the United States Supreme Court has stated, the "desire to harm a politically unpopular group" is not a legitimate state interest.

140.    Additionally, Section 5.43.010 defines a thrift store as "a retail business selling second-hand and/or donated clothes and other household goods typically to raise funds for a charitable institution."

141.    The City exempts from the definition of "thrift store": (1) for-profit antique shops; (2) for-profit consignment shops; (3) swap meets, flea markets, or vintage/antique fairs; (4) garage sales; and (5) non-profit home improvement stores.

142.    There is no legitimate governmental objective to be achieved by the City's use of these classifications, and the City's use of these classifications is not reasonably likely to achieve any legitimate governmental objective.

143.    There is no legitimate governmental objective furthered by restricting the distance with which businesses falling within these classifications may operate.

144.    Even if a legitimate governmental objective for the classification-based distance regulation could be offered, there is no rational basis that a nondiscretionary 5,280-foot minimum actually furthers such an objective.

145.    There is no legitimate governmental reason to treat a business that "raises funds for a charitable institution" differently from for-profit businesses.

146.    There is no rational basis to restrict some businesses that sell used or donated or second-hand goods (Goodwill) but not others (antique stores, consignment shops, swap meets, flea markets, fairs, garage sales, non-profit home improvement stores).

147.    There is no rational basis to restrict some businesses that serve individuals having lower income (Goodwill) but not others (non-profit home improvement stores).

148.    As a result of these deprivations in violation of the United States Constitution, Goodwill is entitled to relief under 42 U.S.C. § 1983.   Specifically, Goodwill is entitled to

injunctive relief prohibiting the City from enforcing the DRB Ordinance against Goodwill and for damages suffered by Goodwill as a result of the City's constitutional violations.

149.    Without relief from this Court, the City, acting under color of state law, will continue to deprive Goodwill of its rights guaranteed by the United States Constitution.

150.    As a result of the City's constitutional violations, Goodwill has suffered lost revenue from its inability to operate at the New Location and increased expenses due to its stymied relocation to the New Location.  Goodwill is entitled to an award of damages under 42 U.S.C. § 1983 in amount to be determined at trial.

151.    An award of reasonable attorneys' fees as part of Goodwill's costs is justified under 42 U.S.C. § 1988(b).  Goodwill's claim for attorneys' fees is cumulative, and therefore increases the longer it takes to resolve this dispute

**WHEREFORE,** Goodwill prays for the Order of the Court (a) finding that the DRB Ordinance violates Goodwill's equal protection rights, (b) declaring the DRB Ordinance void and unenforceable, (c) declaring that Goodwill may operate in the City without a DRB License, (d) awarding Goodwill damages caused by the City's constitutional violations, (e) awarding Goodwill its attorneys' fees, and (f) for such other and further relief as this Court may deem just and proper under the premises.

### COUNT IV – DEPRIVATION OF GOODWILL'S DUE PROCESS RIGHTS IN VIOLATION OF 42 U.S.C. § 1983 AS THE DRB ORDINANCE IS UNCONSTITUTIONALLY VAGUE
### (Against Defendant City)

152.    Goodwill re-alleges and incorporates by reference herein the allegations in Paragraph 1 through 151 of its Complaint as if fully set forth herein.

153.    Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,

CORE/3516491.0005/165721628.1

subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

154.    The Due Process Clause of the Fifth and Fourteen Amendments to the United States Constitution, and Sections 1 and 18 of the Bill of Rights of the Kansas Constitution, ensure protection from an arbitrary deprivation of an individual's liberty or property interest without due process of law.

155.    Goodwill has a constitutionally protected liberty and/or property interest in its Lease and its status as a "lawfully nonconforming business". Indeed, the right to use one's interest in land to any legitimate use is properly within the protection of the Constitution.

156.    The City, under color of state law, has deprived and continue to deprive Goodwill of its due process rights, as secured by the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

157.    The City has no immunity from this claim under the Eleventh Amendment to the United States Constitution.

158.    A statute that either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application violates the Fourteenth Amendment to the United States Constitution and is void for vagueness.

159.    The test to determine whether the DRB Ordinance is unconstitutionally void for vagueness is whether its language conveys a sufficiently definite warning as to the conduct

proscribed when measured by common understanding and practice.  At its heart, the test is a common sense determination of fundamental fairness.

160.    Section 5.43.010 is unconstitutionally vague as it requires one to guess at its meaning and allows for arbitrary enforcement.

161.    Section 5.43.010 defines a thrift store as "a retail business selling second-hand and/or donated clothes and other household goods typically to raise funds for a charitable institution."

162.    Based on this definition, it is unclear how to determine whether a business qualifies as a "thrift store."

163.    This definition refers to a "retail business" that "typically … raise[s] funds for a charitable institution".  The use of the term "typically" makes it unclear whether the description of "rais[ing] funds for a charitable institution" is required for a business to qualify as a "thrift store."

164.    Section 5.43.010 is also unconstitutionally vague because the phrase "raise funds for a charitable institution" is undefined.  Section 5.43.010 does not specify whether a "retail business" is a thrift store if its primary purpose or core mission is to "raise funds for a charitable institution".  Or, alternatively, whether a "retail business" qualifies as a "thrift store" if *any* funds, no matter how nominal, are "raised" for a "charitable institution".  Leaving this phrase undefined makes it too vague to be enforced.

165.    The common understanding of the phrase "to raise funds for a charitable institution" means that a business engages in activities for the purpose of "rais[ing] funds for a charitable institution" and not a business that donates funds generated in the course of its business operations to a charitable institution.

166.     Yet an entity such as Goodwill has no basis to determine whether another business "typically … raise[s] funds for a charitable institution."

167.     Likewise, the City's DRB License application does not request any information regarding the applicant's non-profit status or whether the applicant "typically raises funds for a charitable institution."  Thus, it is unclear how the City determines what entities are deemed "thrift stores" under Section 5.43.010.

168.     The definition of a thrift store – "a retail business selling second-hand and/or donated clothes and other household goods typically to raise funds for a charitable institution" – is drafted in a manner that implies that the "retail business" and the "charitable institution" are different entities.  If so, then Goodwill would not qualify as a "thrift store" under Section 5.43.010 as Goodwill is a 501C3 non-profit that uses its revenue to fund its own mission and does not typically donate funds to other charitable institutions.  Yet, the City has applied the DRB Ordinance to apply to Goodwill.  Why is unclear.

169.     Under Section 5.43.010, a business that sells used or donated "household goods" may qualify as a thrift store, but a business that sells donated "home furnishings" is exempted from the definition of a "thrift store."  Section 5.34.010 fails to explain the difference between a "household goods" and "home furnishings".  Leaving these phrases undefined makes the DRB Ordinance too vague to be enforced.

170.     Further, if the City were able to articulate independent definitions of "household goods" and "home furnishings", then it is likely that Goodwill and other businesses sell goods that fall into both categories.  Given that a "thrift store" is defined in part on the basis of the types of goods that are sold, it is unknown how a retail business is classifiable under the DRB Ordinance

if it sells goods that are included within the definition of "thrift store" ("household goods") **and** goods that are exempted from the definition of a "thrift store" ("home furnishings").

171.   Section 5.43.040 prohibits a thrift store from being "located within 5,280 feet of any other Thrift Store of the same type".  Section 5.43.040 does not define what it means by a "Thrift Store of the same type".  It is unknown whether the City believes that there are different classifications of "thrift stores" and, if so, what they are.  Thus, a retail business is unable to determine what businesses classify as a "thrift store" or a "Thrift Store of the same type" necessary to determine its rights and obligations under the DRB Ordinance.  What "types" of thrift stores are there?  How does the City know?  No discernable answer can be derived from the DRB Ordinance.

172.   As a result of these deprivations in violation of the United States Constitution, Goodwill is entitled to relief under 42 U.S.C. § 1983.  Specifically, Goodwill is entitled to injunctive relief prohibiting the City from enforcing the DRB Ordinance against Goodwill and for damages suffered by Goodwill as a result of the City's constitutional violations.

173.   Without relief from this Court, the City, acting under color of state law, will continue to deprive Goodwill of its rights guaranteed by the United States Constitution.

174.   As a result of the City's constitutional violations, Goodwill has suffered lost revenue from its inability to operate at the New Location and increased expenses due to its stymied relocation to the New Location.   Goodwill is entitled to an award of damages under 42 U.S.C. § 1983 in amount to be determined at trial.

175.   An award of reasonable attorneys' fees as part of Goodwill's costs is justified under 42 U.S.C. § 1988(b).  Goodwill's claim for attorneys' fees is cumulative, and therefore increases the longer it takes to resolve this dispute.

**WHEREFORE,** Goodwill prays for the Order of the Court (a) finding that the DRB Ordinance is unconstitutionally vague, (b) declaring the DRB Ordinance void and unenforceable, (c) declaring that Goodwill may operate in the City without a DRB License, (d) awarding Goodwill damages caused by the City's constitutional violations, (e) awarding Goodwill its attorneys' fees, and (f) for such other and further relief as this Court may deem just and proper under the premises.

### COUNT V – DEPRIVATION OF GOODWILL'S SUBSTANTIVE DUE PROCESS RIGHTS IN VIOLATION OF 42 U.S.C. § 1983
#### (Against Defendant City)

176.    Goodwill re-alleges and incorporates by reference herein the allegations in Paragraph 1 through 175 of its Complaint as if fully set forth herein.

177.    Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

178.    The Due Process Clause of the Fifth and Fourteen Amendments to the United States Constitution, and Sections 1 and 18 of the Bill of Rights of the Kansas Constitution, ensure protection from an arbitrary deprivation of an individual's liberty or property interest without due process of law.

179.    Goodwill has a constitutionally protected liberty and/or property interests in its Lease, in its right to conduct business in the City of Olathe free from illegal discrimination, and in its status as a "lawfully nonconforming business".  Indeed, the right to use one's interest in land to any legitimate use is properly within the protection of the Constitution.

180.    The City, under color of state law, has deprived and continues to deprive Goodwill of its substantive due process rights, as secured by the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

181.    The City has no immunity from this claim under the Eleventh Amendment to the United States Constitution.

182.    Substantive due process is the constitutional guaranty that no person shall be deprived of his life, liberty, or property for arbitrary reasons.

183.    The City does not possesses plenary power to pass legislation that is arbitrary, oppressive, and capricious, and which bears no substantial relationship to the public safety and welfare.

184.    The guarantee of due process demands that the means selected shall have a real and substantial relation to the objective sought to be obtained.

185.    According to the City, the purpose of the DRB Ordinance is to reduce the secondary effect of a negative impact on area commercial property values caused by thrift stores being located within a mile of each other.

186.    It is not a legitimate state purpose to restrict the number of businesses that serve customers who often have lower income.

187.    The DRB Ordinance is arbitrary, oppressive, and capricious and has no reasonable relationship to the alleged harms sough to be prevented.

188.    Goodwill is unaware of any report, study, or analysis that would support a conclusion that thrift stores negatively impact commercial property values.

CORE/3516491.0005/165721628.1

189.    Goodwill is unaware of any report, study, or analysis that would support a conclusion that thrift stores located within a mile of each other would negatively impact commercial property values.

190.    Goodwill is unaware of any report, study, or analysis that would support a conclusion that requiring thrift stores to be located at least a mile away from each other would negate or reduce any impact on surrounding commercial property values.

191.    In passing the DRB Ordinance, it does not appear that the City relied on *any evidence* that could support its stated intent in passing the DRB Ordinance.

192.    There is no evidence that there is *any* "secondary effect" on surrounding commercial property values resulting from a thrift store.

193.    There is no evidence that there is *any* "secondary effect" resulting from two thrift stores being located within a mile of each other.

194.    Indeed, a review of Goodwill's situation shows that the DRB Ordinance does not have a real and substantial relation to the City's objective.

195.    Goodwill's New Location is zoned for commercial retail activities, and the New Location is currently vacant.

196.    It is arbitrary and capricious for the City to conclude that Goodwill's operations at the New Location could have a negative impact on area commercial property values when Goodwill seeks to renovate and operate in a currently unoccupied building in a location zoned for commercial retail activities.

197.    Likewise, there is no rational basis to allow a discount grocer (Aldi) to operate at the New Location but not allow Goodwill to do so out of an alleged concern for the impact on nearby residents, especially when the New Location remains unused and unimproved.

198.     Indeed, the Briarwood Home Owners Association supports Goodwill's plan to open at the new location.  And Goodwill's prior history of operating in the City demonstrates that it typically improves property and contributes to increase in the property value in which it operates.

199.     Further, allowing Goodwill to operate at the New Location would not change the long-standing status quo.  Goodwill simply seeks to move across the street, and thus the number of thrift stores in the City would not increase.  Indeed, the New Location and the Original Location are essentially the same distance away from the Savers store.

200.     There is no legitimate governmental objective sought to be achieved by the DRB Ordinance as it applies to Goodwill.

201.     As a result of these deprivations in violation of the United States Constitution, Goodwill is entitled to relief under 42 U.S.C. § 1983.  Specifically, Goodwill is entitled to injunctive relief prohibiting the City from enforcing the DRB Ordinance against Goodwill and for damages suffered by Goodwill as a result of the City's constitutional violations.

202.     Without relief from this Court, the City, acting under color of state law, will continue to deprive Goodwill of its rights guaranteed by the United States Constitution.

203.     As a result of the City's constitutional violations, Goodwill has suffered lost revenue from its inability to operate at the New Location and increased expenses due to its stymied relocation to the New Location.   Goodwill is entitled to an award of damages under 42 U.S.C. § 1983 in amount to be determined at trial.

204.     An award of reasonable attorneys' fees as part of Goodwill's costs is justified under 42 U.S.C. § 1988(b).  Goodwill's claim for attorneys' fees is cumulative, and therefore increases the longer it takes to resolve this dispute.

**WHEREFORE,** Goodwill prays for the Order of the Court (a) finding that the DRB Ordinance violates Goodwill's substantive due process rights, (b) declaring the DRB Ordinance void and unenforceable, (c) declaring that Goodwill may operate in the City without a DRB License, (d) awarding Goodwill damages caused by the City's constitutional violations, (e) awarding Goodwill its attorneys' fees, and (f) for such other and further relief as this Court may deem just and proper under the premises.

**COUNT VI: INJUNCTIVE RELIEF**
**(Against Defendant City and Defendant Long)**

205.    Goodwill re-alleges and incorporates by reference herein the allegations in Paragraph 1 through 204 of its Complaint as if fully set forth herein.

206.    Section 5.43.040(B) provides that a "Distance-Related Business lawfully in existence on the effective date of this Section will be considered lawfully nonconforming and permitted to obtain a license hereunder and continue in operation in accordance with Chapter 18.60 of the United Development Ordinance."

207.    Goodwill, whose date of formation in Kansas dates back to 1991, and which opened its Olathe store in 2002, was "in existence" when Section 5.43.040 was enacted in 2016.

208.    Accordingly, Goodwill is "lawfully nonconforming" under Section 5.43.040(B).

209.    As a lawfully nonconforming business, Goodwill is entitled to obtain a DRB License and continue in operations.

210.    Goodwill first obtained a DRB License in 2017.  After the issuance of this initial DRB License as a "lawfully nonconforming" business, the renewal of such license is ministerial unless the DRB License is revoked.

211.    Goodwill's DRB License was never revoked under Section 5.43.080(A), which requires a public hearing.

212.     Defendants City and Long's denial of Goodwill's DRB License application was contrary to the City Municipal Code and Defendants City and Long should be compelled to perform their duty under the Municipal Code and grant Goodwill a DRB License.

213.     Defendants City and Long denied Goodwill's DRB License application on the ground that "Goodwill was not a DRB lawfully in existence and could not be considered a lawfully nonconforming business" because it had not conducted business for 90 days.

214.     But Defendants City and Long have not faithfully applied the grandfather clause in the DRB Ordinance.  A business is "considered lawfully nonconforming" if it is "in **existence on the effective date of this Section**."

215.     Defendants City and Long violated their own DRB Ordinance by finding that Goodwill lost its "lawfully nonconforming" status based on actions in 2020.

216.     Additionally, Section 5.43.060 must be limited to situations in which a thrift store permanently ceases operations.  Goodwill has a property interest in its DRB License, and Goodwill cannot lose this property right for temporarily closing its store.  For example, a business that temporarily closes its store for renovations, or to comply with governmental stay-at-home orders responding to the COVID-19 pandemic, cannot lose its DRB License and the ability to re-open its store.

217.     Goodwill, as a "Distance-Related Business lawfully in existence on the effective date[2] of this Section [5.43.040]" is "a lawfully nonconforming [business]" under Code Section 5.43.040(B), which provides that Goodwill "*will be* … permitted to obtain a [Distance Restricted Business L]icense" (emphasis supplied).

---

[2] Goodwill understands Code Section 5.43.040 was made effective soon after its adoption on May 3, 2016.

218.     If the DRB Ordinance is found to be constitutional, then Goodwill has suffered an irreparable injury from the denial of its DRB License and no other remedies available at law are adequate to compensate for this injury.

219.     Given the extreme hardship suffered by Goodwill, and the lack of any hardships suffered by the City, an injunction directing Defendants City and Long to issue Goodwill a DRB License is warranted.

220.     The public interest would be benefited by a permanent injunction because it will allow Goodwill to operate in the City and serve the City's citizens.

221.     Goodwill requests that the Court direct Defendants City and Long to perform their ministerial duties under Section 5.43.040 and grant Goodwill a DRB License.

222.     Additionally, 28 U.S.C. § 2202 provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

223.     Goodwill has suffered lost revenue from its inability to operate at the New Location and increased expenses due to its stymied relocation to the New Location.  Goodwill is entitled to an award of damages under 28 U.S.C. § 2202 in amount to be determined at trial.

**WHEREFORE,** Goodwill prays for the Order of the Court (a) finding that it is entitled to a DRB License, (b) finding that Goodwill is entitled to damages, and (c) for such other and further relief as this Court may deem just and proper under the premises.

## COUNT VII – APPEAL UNDER K.S.A. § 12-760
### (Against Defendant City)

224.     Goodwill re-alleges and incorporates by reference herein the allegations in Paragraph 1 through 223 of its Complaint as if fully set forth herein.

225.    K.S.A. § 12-760 provides that "[w]ithin 30 days of the final decision of the city or county, any person aggrieved thereby may maintain an action in the district court of the county to determine the reasonableness of such final decision."

226.    Goodwill is aggrieved by the City's unreasonable decision to deny its DRB License application.

227.    The City's denial of Goodwill's DRB License application was both unlawful and unreasonable.

228.    As set forth in Count VI, Goodwill is a "lawfully nonconforming" business that is entitle to a DRB License under the City's Municipal Code.

229.    As set forth in Count V, it was unreasonable to deny Goodwill's DRB License application based solely on the distance between Goodwill and other DRB businesses without taking into account the numerous benefits offered by Goodwill's store and the community's support for Goodwill.

230.    As set forth in Count II, it was unreasonable to deny Goodwill's DRB License application without giving Goodwill the opportunity for a hearing and without giving Goodwill an opportunity to obtain a variance or special use permit.

231.    As set forth in Counts III and V, it was unreasonable to deny Goodwill's DRB License application because there was no evidence to support the City's conclusion that allowing Goodwill to operate at the New Location might have a negative impact on surrounding property values.

232.    As set forth in Count III, it was unreasonable to deny Goodwill's DRB License application when other similar businesses may operate in the City without any limitations imposed by the DRB Ordinance.

CORE/3516491.0005/165721628.1

233. As set forth in Count IV, it was unreasonable to deny Goodwill's DRB License application when the DRB License is so vague that the City has no discernible criteria for granting or denying such a license.

**WHEREFORE,** Goodwill prays for the Order of the Court (a) finding that the City acted unreasonably in denying Goodwill a DRB License, (b) finding that Goodwill is entitled to a DRB License, (c) for such other and further relief as this Court may deem just and proper under the premises.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Goodwill of Western Missouri and Eastern Kansas seeks judgment in its favor and against Defendant City of Olathe, Kansas, as follows:

1. For a judgment against Defendant City for the causes of action alleged against it;

2. For compensatory damages in an amount to be proven at trial;

3. For appropriate injunctive relief, directing Defendant City to issue a DRB License to Goodwill if the DRB Ordinance is found to be constitutional;

4. For a declaration that the DRB Ordinance is void and unenforceable at it violates the Due Process Clause and the Equal Protection Clause of the Fifth and Fourteenth Amendments to the U.S. Constitution;

5. For a declaration that the DRB Ordinance is void and unenforceable at it violates Sections 1 and 18 of the Bill of Rights to the Kansas Constitution;

6. For a declaration that Goodwill may operate at the New Location;

7. For a ruling that Defendant City acted unreasonably and unlawfully in denying Goodwill's DRB License application and directing the Defendant City to award Goodwill a DRB License;

8.      For an award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

9.      For pre-judgment and post-judgment interest at the maximum rate permitted by law; and

10.     For all other relief the Court deems just and proper.

WHEREFORE, Plaintiff Goodwill of Western Missouri and Eastern Kansas seeks judgement in its favor and against Defendant Brenda Long, in her official capacity as City Clerk for the City of Olathe, Kansas, as follows:

1.      An injunction directing Defendant Brenda Long, in her official capacity as City Clerk for the City of Olathe, Kansas, to issue a DRB License to Goodwill.

2.      For all other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.


Respectfully Submitted,


  */s/ George F. Verschelden*
George F. Verschelden  KS Bar # 21469
STINSON LLP
1201 Walnut, Suite 2900
Kansas City, Missouri 64106
Tel:    (816) 842-8600
Fax:    (816) 691-3495
george.verschelden@stinson.com

ATTORNEY FOR PLAINTIFF GOODWILL OF WESTERN MISSOURI AND EASTERN KANSAS